This is an action brought by Katie Norwood, widow of A. W. Norwood, against the Grand Lodge of Masons and R. S. Graves, to recover the balance alleged to be due on a policy of insurance for $300 held by her husband in the benefit department of the Masonic Order.
The defendants admitted that the policy of insurance had been issued, and that the plaintiff was the beneficiary therein, and alleged that the amount due thereon had been paid to the plaintiff.
The plaintiff introduced evidence tending to prove that in addition to the policy of $300 in the Masonic Order, her husband also had a policy of $200 in the Odd Fellows Order; that shortly after her husband died the defendant, R. S. Graves, came to her and asked her to give him both policies and that he would collect the money due on the policies for her; that she gave the policies to him, and in about a month thereafter the said Graves told her that her husband was not in good standing at the time of his death, and he didn't think he could get all of the money; that about a month after this conversation the said Graves sent for her again, and then told her that he was unable to collect the full sum due, that he could only collect $100 from the Odd Fellows and $100 from the Masons, making $200 on both policies, and that these two orders refused to pay more than that sum; that her husband was not in good *Page 443 
standing with either lodge, and he advised that she accept the said sum; that the plaintiff was an uneducated negro woman, who read with difficulty, and the said Graves was an educated intelligent negro man; that at the time he told the plaintiff that the Odd Fellows and the Masons would not pay more than $200 he had in his possession three money orders of $100 each delivered to him by the Masons to be used in the payment of the policy of $300, and a draft for $200, delivered to him by the Odd Fellows, with which to pay the policy of the Odd Fellows; that he also told her in this conversation that there was an attorney's fee of $25 that would have to be paid out of the $200 he had collected; that relying on these statements she accepted $175 in settlement for the two policies and executed receipts in full; that at the same time he asked her to sign several papers, and without knowing what they were she indorsed the three money orders for $100 each, and the draft for $200, and they were delivered to the said Graves; that some time thereafter she learned that Graves had collected $500 on the two policies; that he came to see her again, and made other representations to her which were false, and paid her the additional sum of $25, which she claimed was the balance due on the policy of the Odd Fellows, and that she had received nothing from the Masonic Order; that after this action was commenced a committee from the local lodge of the Masons at Reidsville went to see her and asked her how much she claimed to be due, and that she told them that she had not received anything from the Masons; that they told her that the money that she had received was on the Masonic policy; that the $175 and the $25 was paid on that policy, and that they gave her an additional sum of $100, she relying on their statement that $100 had already been paid on their policy; that in the several transactions she gave receipts aggregating $900 or $1,100, when in fact she only received $300 on both policies.
At the conclusion of the evidence there was a motion for judgment of nonsuit, which was overruled, and the defendants excepted.
His Honor charged the jury, among other things, as follows: "If you find by the greater weight of the evidence that when the receipt was procured by the committee for $300 that the committee represented to her that the Masons had already paid her the sum of $200, when in truth and in fact they had not paid her anything, and she, relying upon their statements and believing it to be true, that the $200 which had been paid her had come from the Masons, when in truth and in fact it had not come from the Masonic Order, then if you find these facts by the greater weight of the evidence, the court charges you it would be your duty to answer the issue (`Yes'; that this receipt was procured by fraud and misrepresentation." The defendant excepted. *Page 444 
The jury returned the following verdict:
"1. At the time of the death of A. W. Norwood did he have a certificate of insurance in the Masonic Lodge in the amount of $300? Answer: `Yes.'
"2. Is the plaintiff, Katie Norwood, the beneficiary named in the certificate of insurance in the amount of $300 insured by the Masonic Insurance Department? Answer: `Yes.'
"3. Did the defendants, or either of them, obtain receipts from the plaintiff for the $300 referred to in the Masonic certificate of insurance? Answer: `Yes.'
"4. If so, were said receipts obtained by fraud or misrepresentation? Answer: `Yes.'
"5. Are the defendants, or either of them, indebted to the plaintiff? If so, what amount? Answer: `$200, and interest from date of postoffice money orders, but not the Grand Lodge, but R. S. Graves.'"
Judgment was entered upon the verdict against the defendant, R. S. Graves, alone, and he excepted and appealed.
The recital of the evidence as stated above fully justifies the refusal of his Honor to grant the motion of the defendant for judgment of nonsuit, and is ample to sustain the allegations of fraud.
If, however, there was no fraud in the transaction, the evidence shows that the defendant Graves was the agent of the plaintiff for the collection of the policies; that he collected $500, and has only paid to her $300, and he would of course be required to pay to her the balance of the money in his hands.
The receipts purporting to cover the entire amounts collected by the defendant Graves are only prima facie evidence of their correctness, and would not preclude the plaintiff from showing the true amount of the money paid to her.
"When a receipt is evidence of a contract between parties it stands on the same footing with other contracts in writing, and cannot be contradicted or varied by parol evidence; but when it is an acknowledgment of the payment of money or of the delivery of goods, it is merely primafacie evidence of the fact which it recites, and may be contradicted by oral testimony. 1 Greenleaf on Evidence, sec. 308; Reid v. Reid, 2 Dev., 247; Wilson v. Derr, 69 N.C. 137." Harper v. Dail, 92 N.C. 397.
The cases in our reports in support of this proposition are numerous.
The exception to the charge upon the ground that the committee from the lodge were not the agents of the defendant Graves, and that therefore he is not bound by their representations would be entitled to more *Page 445 
consideration but for the fact that at that time the inquiry was pending before the jury as to the liability of the Masonic Order as well as the liability of the defendant Graves, and as the Masonic Order was relying upon the plea of payment and of the receipt procured by the members of the committee it was proper for the judge to charge the jury that if they made misrepresentations in order to procure the receipts that the plaintiff would not be bound by them.
These are the exceptions principally relied on by the defendant.
We have, however, examined all of the exceptions, and find
No error.