FRED B. WILKERSON v. METROPOLITAN LIFE INSURANCE COMPANY.

(Filed 11 July, 1934.)

1. **Payment A a—**

   The possession of a receipt for the payment of money is prima facie evidence of payment.

2. **Insurance E a—Evidence of payment of first premium upon application, resulting in putting insurance in force, held for jury.**

   Defendant insurer's form of application for insurance had attached at the bottom by a perforated line, a receipt form for the first full premium providing that if the first full premium were paid at the time of application the policy should be in force from date of application if the application were accepted by insurer and the policy issued according to its terms. Plaintiff testified that at the time of making application he paid the first full premium with the cash surrender value of a lapsed policy issued to him by insurer. At the time of making application, insurer's agent had in hand, without the knowledge of plaintiff, a check issued by insurer to plaintiff for the cash surrender value of the lapsed policy, the check being in a sum in excess of the amount of the first full premium on the policy applied for. Plaintiff further testified that insurer's agent detached the receipt from the application and delivered it to him, but that plaintiff had lost same. The original application produced in court had the receipt detached therefrom. The policy was thereafter issued by insurer in accordance with the application, but was never delivered to plaintiff. *Held*, evidence of payment by plaintiff at the time of applying for the policy was sufficient to be submitted to the jury upon plaintiff's contention that the policy was in force from that date, although there was evidence that insurer's agent thereafter delivered to plaintiff insurer's check for the cash surrender value of the lapsed policy and plaintiff at that time gave his check to insurer's agent in payment of the first full premium.

**3. Same: Compromise and Settlement B b—Evidence of plaintiff's mental incapcity at time of alleged settlement held for jury.**

In this action on a disability clause in a policy of life insurance defendant insurer contended that the policy was never issued and was never in force and introduced in evidence a receipt signed by plaintiff acknowledging the return to plaintiff of money advanced upon application for the policy, contending it was refunded because the policy was not issued. Plaintiff testified that he did not remember signing the receipt, and that at the time the alleged receipt was signed he did not have sufficient mental capacity to understand the nature of the transaction, and introduced other testimony of his mental incapacity at that time. *Held*, whether the receipt constituted a settlement between the parties should have been submitted to the jury under the evidence.

**4. Appeal and Error J g—**

Where a new trial is awarded upon certain exceptions, the Supreme Court will not consider other exceptions relating to matters which may not arise upon the subsequent hearing.

SCHENCK, J., took no part in the consideration or decision of this case.

CIVIL ACTION, before *Barnhill, J.,* at October Term, 1933, of WILSON.

On 15 May, 1929, the plaintiff signed an application for a $5,000 life insurance policy, to be issued by the defendant company. The plaintiff said: "I was personally acquainted with Mr. Haskett and Mr. Massey. They were agents for the Metropolitan Life Insurance Company in Wilson. I lived in an adjoining apartment from Mr. Haskett in the same house. . . . Mr. Haskett solicited me for insurance on several different occasions. . . . I had occasion to see Mr. Haskett and Mr. Massey in their office on the night of 15 May, 1929. I was also to go to their office. After I got to their office I signed an application for a $5,000 life insurance policy with disability. . . . I paid the first premium when I signed the application. I paid it with the cash surrender value of the lapsed policy. The lapsed policy was with the Metropolitan Life Insurance Company and the cash surrender value of the lapsed policy was about $10.00 more than the first premium on the new policy, which was $35.25, and the cash surrender value was around $45.00. . . . I did not sign a paper releasing the cash surrender value of the old policy at the time I delivered the old policy to the agent, but I authorized them by word of mouth to use it. I was examined by Dr. Bell. I got home around midnight. I told my wife when I got home that I had been in the office with Mr. Haskett and Mr. Massey and had applied for a life insurance policy of $5,000 with disability benefits, double accident and waiver of premium, and that in case I became disabled I would draw $50.00 per month. I told her that I had paid the first premium. She asked me where I got the money with which to pay it, and I told her I turned in a lapsed policy that I

had allowed to lapse when I was in the army and that it had a cash surrender value. Mr. Haskett suggested that method of payment. He had seen the old policy. . . . After I had signed the application Mr. Massey gave me a receipt from the bottom of the application. I have lost the receipt. . . . I read the application before I signed it. At the time I signed the application there was a receipt at the bottom attached by a perforated line, which was torn off after I signed it. That was the receipt given me. . . . Sometime before I signed the application for my new policy I delivered the old policy that had a cash surrender value to the company. I delivered it to Mr. Haskett. It was delivered before I signed the application for the new policy." The copy of receipt form referred to by the witness, was offered in evidence and is as follows: "Received from ..... ....... ............. ...... .. (the applicant), ...... .......... ..... dollars on account of application made this date to the Metropolitan Life Insurance Company. If this sum is equal to the full first premium on the policy applied for and if such application is approved at the company's home office for the class, plan and amount of insurance therein applied for, then the insurance applied for shall be in force from this date, but otherwise no insurance shall be in force under said application unless and until a policy has been issued and delivered, and the full first premium stipulated in the policy has actually been paid to and accepted by the company during the lifetime of the applicant. The above sum shall be refunded if the application is declined or if a policy is issued other than as applied for and not accepted by the applicant." The application signed by the plaintiff was produced in court and the receipt form at the bottom had been detached. Plaintiff testified: "I got a check for the cash surrender value of the old policy on 12 September, 1929, on the day I gave to the agents of the Metropolitan a check for $35.25. That was in payment of premium on the policy I am now suing on. . . . A check for $44.21 from the Metropolitan Life Insurance Company, dated 7 May, 1929, was delivered to me on 12 September, 1929. I had to give them my check before they delivered this. . . . I did not know that this check was in Wilson at any time before 12 September. . . . I had an operation for tonsilitis and I had an enlarged bone in my nose removed on 20 August, 1929. Both operations were successful. I reported back to work 6 September, 1929, fully recovered. . . . In August some agent of the company came to me and told me to go back to Dr. Bell to be examined. . . . I think it was about the 15th of August. . . . The insurance I applied for contained disability benefits of $50.00 per month as long as I was disabled. . . . Also waiver of premium and double accident."

There was also evidence that the defendant had promulgated certain rules to agents soliciting business in 1929 and that section 413 of these rules provided as follows: "The full first premium required by the policy applied for should be collected when the application is signed; this is, usually, the best time to make the collection. It will assure acceptance of the policy. As an inducement for the applicant to pay the full first premium in advance, the advance payment receipt automatically becomes a "binding receipt," so that if the application is officially approved for the class, plan and amount of insurance therein applied for, then the insurance applied for will be in force from the date of the application," etc. Section 424 of said instructions in force at the time provided among other things: "If the full first premium was received with the application and the insurance issued is exactly what was applied for, and no material facts were omitted from or misrepresented in the application, the policy may be delivered at once, regardless of any change that may have occurred in the health of the applicant since the application was written."

On 15 September, 1929, the plaintiff suffered a stroke of paralysis. He was operated on on 28 September, and there was testimony that during that period of time "he didn't have any mind at all." The wife of plaintiff said: "For a period of two weeks after 14 October, he was in a dazed condition all the time. He did not know anything. During that time in my opinion he did not know right from wrong, or anything." There was other testimony from neighbors to the same effect.

C. A. Massey, agent for the defendant, was examined by the plaintiff as an adverse witness and testified that he was detached assistant manager of the defendant. This witness said: "During the summer of 1929 I received from the Metropolitan office a policy of life insurance issued to Fred Wilkerson, the insured. . . . The policy was issued pursuant to the application and the policy was as applied for in the application. . . . I had a check in the amount of $44.21, payable to Fred Wilkerson, which came into this office. I had a conversation with Mr. Wilkerson about the check at the time application was completed. After the application was completed the matter of equity of the check was discussed. . . . I kept the policy in my possession from the time it arrived until 12 September because he had a siege of sickness. I held the policy from the time I received it until the time I took it up with him about an additional examination because he was sick. I received the policy in August. . . . I was ready to deliver it on 12 September subject to the home office instructions. On 12 September he had given me his check. On the date the original application was signed I had in my possession at that time a check from the company payable to Fred Wilkerson in an amount more than the

amount of the premium. Fred Wilkerson did not pay anything on 15 May, 1929, on account of premium. He did not give a check or a note or anything of value. I did not give him a receipt showing payment in advance. He said that something is torn off of the application, but I did not tear it off the application. It went to the home office. That was attached to it."

No policy was ever delivered to plaintiff. Moreover plaintiff testified: "I don't remember the agents of the Metropolitan giving me $35.25 on 17 October, 1929, or my giving them a receipt. I don't remember signing that paper. It looks like my signature. It looks kinder like my signature." The receipt was read to the plaintiff and was in the following language: "I acknowledge the return to me of the advance payment of $35.25 made to the Metropolitan Life Insurance Company on account of my application for insurance, upon which the policy applied for was not issued." Plaintiff further said: "I don't remember anybody giving me back any money as a refund of premium on or before 17 October, 1929. I don't remember seeing Mr. Haskett or anybody else during that time. Neither Mr. Haskett nor anybody else paid me any money back that I remember from the time I went to Richmond for Thanksgiving. Everything seemed to be a daze—almost like a dream. I got sick 15 September, 1929. I completely lost my memory about the time I went to the hospital and had an X-ray made of my head."

Upon the conclusion of plaintiff's evidence the trial judge sustained a motion of nonsuit and the plaintiff appealed.

*Troy T. Barnes and Finch, Rand & Finch for plaintiff.*
*Smith, Wharton & Hudgins and Connor & Hill for defendant.*

BROGDEN, J. The facts present two questions of law, to wit:

1. Was there any competent evidence of the prepayment of premium by the plaintiff upon signing the application on 15 May, 1929?

2. Is the right of plaintiff to maintain this action foreclosed by a receipt given the defendant on 17 October, 1929?

The plaintiff applied for a certain sort of policy providing disability benefits and waiver of premium. Such a policy was issued and forwarded to the agent at Wilson, North Carolina, but never delivered to the plaintiff. The defendant asserts that such delivery was not made because its agents had information that the plaintiff was not in good health and required a further physical examination. Hence the defendant maintains that, as no policy was delivered, the plaintiff cannot recover.

Upon the other hand, the plaintiff asserts that he paid the premium at the time of signing the application on 15 May, 1929, and that a receipt for such payment was detached from the application and delivered to him, which he had since lost or misplaced. This receipt provided that if the premium was paid at the time the application was signed, the insurance would be in full force and effect from the date thereof, if the application was approved, otherwise the insurance became effective upon delivery of the policy. What then, is the evidence tending to show payment of premium at the time the application was signed? The plaintiff said: (a) "I paid the first premium when I signed the application. I paid it with the cash surrender value of the lapsed policy." (b) At the time the application was signed on 15 May, 1929, the agent for the defendant, unknown to the plaintiff, actually had in hand a check issued by the defendant and payable to the plaintiff for $44.21, which was in excess of the premium on the new policy. (c) The plaintiff testified that the agent for the defendant detached from the application the receipt and delivered it to him. There was a perforated line separating the receipt from the application and when the original application was produced in court the receipt was detached therefrom.

The term payment was thus defined in *Moore v. Construction Co.,* 196 N. C., 142, 144 S. E., 692: "Payment is the discharge of a debt by the delivery of money or other thing of value; it is the fulfilment of a promise or the performance of an agreement. In a strict legal sense there must be a delivery by the debtor and an acceptance by the creditor of money or its equivalent with intent in whole or in part to pay a debt or to satisfy an obligation."

More than one hundred years ago this Court, speaking through *Reid v. Reid,* 13 N. C., 247, said: "I think the receipt prima facie evidence, that an account was stated between the parties, and the balance of seven dollars then paid. It certainly is not conclusive that full payment is made. It is not conclusive of anything, . . . not even that the seven dollars were paid." To like effect is the declaration in *Keaton v. Jones,* 119 N. C., 43, 25 S. E., 710, as follows: But when the writing is only an acknowledgment of payment or delivery, it is only prima facie conclusive, and the fact recited may be contradicted by oral testimony. See, also, *Harper v. Dale,* 92 N. C., 397; *Norwood v. Grand Lodge,* 179 N. C., 441, 102 S. E., 749. Consequently, the possession of a receipt for the first premium, nothing else appearing, is prima facie evidence of payment.

While the record discloses that the plaintiff gave to the agent of the defendant a check on 12 September for $35.25 to pay the premium and received a check from the defendant for $44.21; nevertheless, the Court is of the opinion that there was sufficient evidence of payment at the

time the application was signed to be submitted to a jury for its determination from all the facts and circumstances of the case.

The second question of law relates to a receipt which the plaintiff gave to the agents of defendant on 17 October, 1929, for the return of the premium amounting to $35.25. The testimony of plaintiff and of other witnesses tends to show that at said time the plaintiff did not have sufficient mental capacity to understand the nature of the transaction. Consequently, the question as to whether there was a settlement between the plaintiff and the defendant on 17 October, 1929, must also be submitted to a jury.

There are certain other exceptions in the record which are not discussed for the reason that as a new trial is awarded, it is deemed inadvisable to debate and decide questions which may never arise at a future hearing.

New trial.

SCHENCK, J., took no part in the consideration or decision of this case.